IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jamar Lavert Belk, | ) | C/A No. 0:15-1129-SB-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Jamar Lavert Belk, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 17.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Belk was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 19.) Belk filed a response in opposition to the respondent's motion. (ECF No. 21.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Belk's Petition denied.

## BACKGROUND

Belk was indicted in August 2010 in York County for murder, armed robbery, possession of a firearm during the commission of a violent crime, and criminal conspiracy. (App. at 75-81, ECF No. 18-1 at 77-83.) Belk was represented by Michael L. Brown, Esquire, and on October 4, 2012

pled guilty as charged.[1]  (App. at 1-14, ECF No. 18-1 at 3-16.)  The circuit court sentenced Belk to thirty years' imprisonment for murder, thirty years' imprisonment for armed robbery, five years' imprisonment for possession of a firearm during the commission of a violent crime, and five years' imprisonment for criminal conspiracy, all sentences to be served concurrently.  (Supp. App. at 11-12, ECF No. 18-2 at 13-14.)  Belk did not appeal his plea or sentence.

Belk filed a *pro se* application for post-conviction relief ("PCR") on September 30, 2013 in which he raised the following claims:

> [1.]    Ineffective Assistance of Counsel
> Counsel refused to prepare Petitioner's case for trial against Petitioner's wishes; counsel instead sought to plea;
> Counsel failed to offer alibi;
> Counsel failed to use co-defendant conflicting statement as evidence towards Petitioner's innocence;
> Counsel verbally admitted that since Petitioner was not paying he would not be fully represented;
> Counsel's representation fell below standard.
>
> [2.]    Prosecutorial Misconduct

(See Belk v. State of South Carolina, 13-CP-46-2984; App. at 16-22, ECF No. 18-1 at 18-24) (errors in original).  The State filed a return.  (App. at 25-29, ECF No. 18-1 at 27-31.)  On April 15, 2014, the PCR court held an evidentiary hearing at which Belk appeared and testified and was represented by Leah B. Moody, Esquire.  At the start of the hearing, counsel for Belk moved for a continuance of the hearing so that Belk's two brothers (who were also co-defendants) could be present.  This motion was denied.  Counsel for Belk then withdrew the claim of prosecutorial misconduct.  By

---

[1] An additional charge of possession of a weapon during the commission of a violent crime and a charge of kidnapping were *nol prossed*.



order filed April 16, 2014 the PCR court denied and dismissed with prejudice Belk's PCR application. (App. at 69-74, ECF No. 18-1 at 71-76.)

On appeal, Belk was represented by David Alexander, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a Johnson[2] petition for a writ of certiorari that presented the following issue:

> Whether the trial court erred in not granting a continuance to allow petitioner's brothers to be transported to court from prison to testify at the PCR hearing?

(ECF No. 18-3.) Belk filed *pro se* responses to the Johnson petition in which he raised the following issues:

[1]    Did a conflict of interest exist where appellant was represented at P.C.R. by the same counsel as his co-defendant.

[2]    Did the P.C.R. court err when the court ruled that trial counsel was not ineffective when counsel failed to investigate the alibi witness, exculpatory evidence, co-defendant conflicting statements of my co-defendants and defective arrest warrants.

[3]    Did the P.C.R. court err when the court ruled my trial counsel was not ineffective failed to prepare my case for trial when I wanted to go to trial.

[4]    Did the P.C.R. court err when the court ruled to challenge the delay of my indictments, or my denial of my right to a speedy trial.

[5]    Counsel was ineffective when he lied about a statement that was supposed to have been written by appellant.

---

[2] Johnson v. State, 364 S.E.2d 201 (S.C. 1988) (applying the factors in Anders v. California, 386 U.S. 738 (1967) to post-conviction appeals). Anders requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. Anders, 386 U.S. at 744.



[6]    Counsel was ineffective when he failed to inform appellant of his right to an direct appeal nor did counsel file the direct appeal.

(ECF No. 18-5) (errors in original).  On February 4, 2015, the South Carolina Supreme Court issued an order denying Belk's petition for a writ of certiorari.  (ECF No. 18-6.)  The remittitur was issued on February 20, 2015.  (ECF No. 18-7.)  Belk filed a *pro se* petition for rehearing on February 23, 2015, but the South Carolina Supreme Court declined to consider the filing as it was untimely.  (ECF No. 18-8.)  This action followed.

## FEDERAL HABEAS ISSUES

Belk's federal Petition for a writ of habeas corpus raises the following issues:

**Ground One:**  Did a conflict of interest exist, where petitioner was represented at P.C.R. by the same counsel as co-defendant[?]
**Supporting Facts:**  Petitioner was inform on the telephone, after P.C.R. hearing that he was represented by the same counsel as his co-defendant.

**Ground Two:**  Counsel failed to do any investigation[.]
**Supporting Facts:**  Counsel failed to investigate alibi witness, failed to investigate conflicting statements by co-defendant, failed to investigate exculpatory evidence and defective arrest warrants.

**Ground Three:**  Did the P.C.R. court err in ruling counsel was not ineffective when he failed to inform the petition right to direct appeal or file the appeal.
**Supporting Facts:**  Counsel never informed petitioner of his right to a direct appeal nor did counsel file for a direct appeal.

**Ground Four:**  Counsel was ineffective when he lied about a statement that petitioner was supposed to have written, and he failed to prepare my case for trial.
**Supporting Facts:**  Counsel lied to the court concerning a statement that was supposed to have been made by petitioner.  He also failed to prepare my case for trial as I wished failing to do any investigation to prepare for trial.

**Ground Five:**  Did the P.C.R. court err when the court ruled to challenge the delay of my indictments or my denial of my right to a speedy trial.
**Supporting Facts:**  It took up to a year for me to get indictment on these charges. My lawyer failed to request for me a speedy trial after I told him to do so.  I even



went and did a motion for a speedy trial myself, but got denied of one. Lawyer failed
to do one for me.

(Pet., ECF No. 1) (errors in original).

## DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine

dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing

to particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary

judgment "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once

the moving party makes this showing, however, the opposing party may not rest upon mere

allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth



specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the



petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103).  Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review.  Harrington, 562 U.S. at 101.  Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning.  See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief.  Id.  Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court.  Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id.  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

## C.    Exhaustion Requirements

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.").  To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim."  Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted).  Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules.  Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991).  For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.    Summary Judgment Motion**

**1.    Claims That Are Not Cognizable**

In Ground One, Belk asserts that PCR counsel suffered a conflict of interest as she also represented a co-defendant.  (Pet., ECF No. 1 at 5.)  Belk's claim appears to be grounded on an allegation of ineffective assistance of PCR counsel.  As argued by the respondent, this ground is not cognizable on federal habeas review.  "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Alternatively, to the extent Belk is arguing an impropriety in the PCR process, such a claim is again not cognizable on federal habeas review because deficiencies in a post-conviction proceeding are not cognizable under 28 U.S.C. § 2254.  Heyward v. Burtt, 2007 WL 2021888 (D.S.C. July 6, 2007) (citing Pennsylvania v. Finley, 481 U.S. 551 (1987), and Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988)).  A habeas court cannot grant relief based on errors occurring during state collateral review proceedings.  See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998).  Accordingly, Belk's first claim is not cognizable on federal habeas review and the respondent's motion for summary judgment should be granted as to Ground One.

**2.    Ineffective Assistance of Counsel Claims**

**a.    Ineffective Assistance of Counsel Generally**

A defendant has a constitutional right to the effective assistance of counsel.  To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  Id. at 687; see also Williams v. Taylor, 529 U.S.



362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").  To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  However, to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).  To establish the prejudice prong of the Strickland test, a habeas petitioner who pled guilty must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (discussing the Strickland v. Washington standard to establish ineffectiveness of counsel in the context of a guilty plea).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105.  The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).  The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions

PJG

were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court, which may provide reasons or theories that the appellate court could have relied upon in summarily denying Belk's Petition.  Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

###### b.    Ground Two

In Ground Two, Belk asserts that counsel failed to adequately investigate—specifically, that counsel failed to discover a statement of Joshua Squire which Belk claimed would have exonerated him, failed to investigate alibi witnesses and exculpatory evidence, and failed to recognize the arrest warrants were defective.  (Pet., ECF No. 1 at 6-7.)

Relevant to this claim the PCR court found:

> Applicant alleges a co-defendant, Joshua Squire[], had given a statement exonerating Applicant and the existence of such statement was favorable to his defense.  Trial counsel testified that he has never found such a statement and the well-organized file he received from Applicant's prior appointed attorney did not contain any such statement.  Absent the statement for the Court's review and in the absence of any evidence that trial counsel ever had possession of or ever saw such statement, the Court finds no ineffective assistance of counsel regarding the Squire statement.

> Applicant testified his mother and sisters would have provided him an alibi.  Applicant's mother and sisters did not testify at his PCR hearing.  Trial counsel testified that his investigator interviewed Applicant's mother and sisters and they would not have provided alibi defense testimony on behalf of Applicant.  Applicant



has failed to carry his burden of proof and trial counsel was not only not ineffective for not presenting alibi witnesses, but had none to call to testify.

Applicant testified in addition to the matters set forth above that his arrest warrants were "wrong" and that there was a "delay" in his indictment. Applicant offered no evidence on either of these issues save his assertion that these are issues he had regarding trial counsel's representation. These allusions to the warrant's problem and the delayed indictment are facially without merit.

(ECF No. 18-1 at 74-75.)

The PCR court's denial of Belk's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the <u>Strickland/Hill</u> standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision. As noted by the PCR court, Belk's mother and sisters did not testify at the PCR hearing and as the investigator found, there is no evidence to suggest those witnesses would have provided alibi witness testimony. Similarly, Belk has not provided any information to support his improper indictment claim. The only evidence set forth in support of his habeas petition is a letter from Joshua Squire, stating,

[A]ll that was said I Joshua Squire on the Incident Interview Report is not true. On both interview days 10/17/08 and 10/22/08 all I complied to do was to sign my waiver of rights form. I did not state any of the things said in the report given by officer Eddie Strait. I have been lied on by Eddie Strait and Lt. Tim Hager and I am willing to testify this in Court. I feel my rights have been violated by the Sheriff's Office of York Co. South Carolina and its officers and I want these Indictment Reports dismissed.

(Petr.'s Resp. Opp'n Mot. Summ. J., ECF No. 23-2.)



A review of the record in this matter leaves no doubt that Belk's guilty plea was knowing, voluntary and intelligent:

> SOLICITOR THOMPSON:  Your Honor, this occurred on October 8th of 2008, here in York County in Fort Mill.  And as we've described in the two pleas of his brother[]s, one earlier today and one earlier this week, this happened at the Any Day Pay Day Lending where Mr. Joseph Fatigato was the proprietor of Any Day Pay Day who was working that day when Joshua Squire[] came in and basically scoped out the place.  Joshua Squire[] had been in a conspiracy with Mr. Belk and his brothers, with Jamar Belk, Tyree Belk and Curtis Belk to commit an armed robbery at Any Day Pay Day.  He was basically the look out initially to scope it out and when - and was the driver of the car that they later meet up with when they ditched the van that was stolen in order to commit the robbery.

> All three of the brothers ultimately got into that mini van that had been stolen, drove it to Any Day Pay Day which is in a little strip mall, parked several stores down, got out of the van ran into Any Day Pay Day Lending, all had mask and gloves, it was Jamar Belk though who had the pistol.  When he came in with the pistol he put one man to the wall who was the FedEx guy who happened to be there at the time.  He complied with their commands and put his head against the wall.  His two brothers went behind the counter, Curtis Belk took the money from the cash drawer at that time.  Tyree Belk grabbed Mr. Fatigato and forced him around behind the counter ultimately pushing him and hitting him during the course of the robbery and then ultimately bringing out- bringing him out in front of the actual counter.  When he brought him out in front of the counter that is when after the money had been stolen that Jamar Belk fired one shot which was a fatal shot to Mr. Fatigato and ultimately killed him.
> . . . .

> Ultimately, Your Honor, as the Court knows both Curtis Belk and Tyree Belk entered pleas agreeing to testify if necessary regarding the crime implicating their brother Jamar and saying that he was and confirmed that he was the shooter in this particular offense, and that's what brings us before the Court today.

> THE COURT:  Mr. Belk, are those facts true and accurate?

> MR. BELK:  Yes, sir.

> THE COURT:  Are you indeed guilty of Criminal Conspiracy?

> MR. BELK:  Yes, sir.

> THE COURT:  Are you indeed guilty of Possession of a Weapon During the Commission of a Violent Crime?



MR. BELK:  Yes, sir.

THE COURT:  Are you guilty of Armed Robbery?

MR. BELK:  Yes, sir.

THE COURT:  Are you guilty of Murder?

MR. BELK:  Yes, sir.

THE COURT:  You stand before me pleading guilty but you don't have to plead guilty to anything.  You could exercise your right to a jury trial.  In that process the jury would determine whether or not the State can actually prove you guilty beyond a reasonable doubt.  I would charge the jury as a matter of law that you're presumed to be innocent; no one can require that you take the witness stand.  However if you wanted to you could and you could subpoena witnesses on your own behalf.  In addition to that you and your lawyer could cross-examine the State's witnesses.  You'd have the opportunity to eyeball them and confront them as they testified against you.  Do you realize that by pleading guilty you're giving up all these rights?

MR. BELK:  I understand that, sir.

THE COURT:  Do you still wish to plead guilty?

MR. BELK:  Yes, sir.

THE COURT:  Are you indeed guilty?

MR. BELK:  Yes, sir.

THE COURT:  Plea negotiations from the State?

SOLICITOR THOMPSON:  The negotiated thirty-year sentence, your Honor, as well as the charge that we are dismissing.

THE COURT:  Is that your understanding, Mr. - -

MR. BROWN:  Yes, sir, Your Honor.  It's a negotiated plea for thirty years.

THE COURT:  All right.  It that your understanding, Mr. Belk?

MR. BELK:  Yes, sir.

THE COURT:  All right.  Mr. Belk, are you satisfied with your lawyer?

MR. BELK:  Yes, sir.

. . . .

THE COURT:  Have you understood all your conversations with him?

MR. BELK:  Yes, sir.

THE COURT:  Particularly those having to do with the elements of all these offenses and potential defenses and your constitutional rights?

MR. BELK:  Yes, sir.

THE COURT:  And you understand the collateral consequences of your plea, the fact these are violent offenses that adversely affects your custody status?  And that two of these are most serious offenses, and one of which you'll serve day per day, the thirty years.  Do you understand that don't you?

MR. BELK:  Yes, sir.

THE COURT:  All right.  Do you have any complaints against your lawyer?

MR. BELK:  No, sir.

THE COURT:  All right.  Do you need any additional time to discuss this matter with your lawyer?

MR. BELK:  No, sir.

THE COURT:  All right.  Has anybody promised you anything, threatened you, pressured you, mistreated you in any way shape or form in an effort to get you to plead guilty here today?

MR. BELK:  No, sir.

THE COURT:  It's been your decision to plead guilty?

MR. BELK:  Yes, sir.

THE COURT:  Are you indeed guilty?

MR. BELK:  Yes, sir.

(ECF No. 18-1 at 8-14.)

According to Belk's PCR testimony, he knew of Squire's statement prior to entering his plea. (ECF No. 18 at 17.)  Nevertheless, as evidenced above, after both of his brothers agreed to testify against him, Belk elected to plead guilty and thereby waived his right to contest the charges at trial. It is well-settled that a knowing, voluntary, and counseled guilty plea waives all allegations that seek to raise antecedent, non-jurisdictional, constitutional rights.  See Tollett v. Henderson, 411 U.S. 258, 267 (1973).  Moreover, Squire's statement does not exonerate Belk.  The record shows that Squire was the "look out" and both of Belk's brothers, Curtis and Tyree, who were inside Any Day Pay Day with Belk agreed to testify, confirming that Jamar Belk was the shooter.  Belk does not provide any evidence to the contrary.

Upon careful review of the record and the PCR court's order, the court concludes that Belk has failed to establish that counsel's actions were error, much less that they were objectively unreasonable such that it rendered her performance deficient.  Belk's arguments fail to demonstrate that any of the PCR court's findings were unreasonable, nor have they shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable.  See Williams, 529 U.S. at 410; see also Harrington, 562 U.S. at 101. Accordingly, the respondent's motion for summary judgment should be granted as to Ground Two.

c.      **Ground Three**

In Ground Three, Belk argues that the PCR court erred in finding counsel was not  ineffective when counsel failed to inform Belk of his right to appeal.  (Pet., ECF No. 1 at 8.)  The respondent contends that Belk's Ground Three is procedurally defaulted because he failed to raise the issue in his PCR application.  The court agrees.  Belk failed to raise the claim with the PCR court and the South Carolina Supreme Court.  Because the claim was not fairly presented to the highest state court,



the claim is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  See Coleman, 501 U.S. 722;  Matthews, 105 F.3d at 915.

Belk argues that the reason that he did not raise the issue before the state courts is because PCR counsel failed to raise the issue.  (Pet., ECF No. 1 at 8.)  Pursuant to Martinez v. Ryan, an error by a prisoner's post-conviction counsel during his initial state collateral review proceeding can qualify as "cause" to excuse the procedural default of a claim of trial counsel ineffectiveness claim if:  (1) state law required the prisoner to wait until post-conviction review to raise Strickland claims; (2) the prisoner's underlying Strickland claim is "substantial"; and (3) the prisoner can establish that his post-conviction counsel was ineffective under the Strickland standard.  Martinez, 132 S. Ct. 1309, 1318-19 (2012).  To the extent Belk seeks to invoke Martinez to allege his PCR counsel was ineffective for failing to raise the claim, under the Martinez exception, Belk must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit."  Martinez, 132 S. Ct. at 1318-19. Therefore, Belk must show that there is a reasonable probability that he would have received relief on his claim of ineffective assistance of trial counsel in his application for PCR if that claim had been raised, and that his PCR counsel's failure to raise the claim during his PCR proceeding was objectively unreasonable.  Ford v. McCall, C/A No. 8:12-cv-02266-GRA, 2013 WL 4434389, at *11 (D.S.C. Aug.14, 2013) (citing Horonzy v. Smith, No. 1:11-cv-00235-EJL, 2012 WL 4017927, at *6 (D. Idaho Sept.12, 2012) ("The application of the Strickland test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that

Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one.").

Applying <u>Martinez</u> to the record and Belk's Ground Three, the court concludes that Belk cannot satisfy <u>Martinez</u>'s limited exception. The record shows that Belk confirmed during his guilty plea hearing not only that he was aware of his right to appeal, but also that he was aware of the ten-day limit to seek an appeal. (ECF No. 18-1 at 14.) Upon review of the record, including the plea and sentencing transcripts, and the PCR proceedings, Belk cannot demonstrate a substantial claim of ineffective assistance of trial counsel; that PCR counsel was objectively unreasonable in failing to raise it; and that, but for PCR counsel's errors, there is a reasonable probability that Belk would have received relief on his claim of ineffective assistance of trial counsel. Because Belk cannot demonstrate that his ineffective assistance trial counsel claim was substantial and that PCR counsel was ineffective under <u>Strickland</u> in failing to raise the claim, he cannot establish cause under <u>Martinez</u> excusing the procedural default of his claim. Consequently, the respondent's motion for summary judgment should be granted as to Ground Three.

### d.    Ground Four

In Ground Four, Belk asserts that counsel was ineffective "when he lied about a statement that petitioner was supposed to have writ[t]en, and he failed to prepare my case for trial." (Pet., ECF No. 1 at 9.) Belk's Ground Four is without merit.

To the extent Belk argues that counsel was ineffective for failing to properly investigate his case, the court has addressed Belk's allegation in Ground Two above. To the extent Ground Four contends that plea counsel lied when he stated to the court that Belk had written an apology letter to the family, Belk has not shown counsel was ineffective here, nor that counsel's actions caused



prejudice. See Strickland, 466 U.S. at 687. The record shows that counsel noted at the PCR hearing that after Belk's brothers "rolled" on him, he admitted to everything in the indictment and subsequently wrote a letter to the victims apologizing for his actions. (ECF No. 18-1 at 65.) Indeed, counsel at sentencing pointed out that Belk "[t]o his credit, as bad as this thing is, he did write a letter after he entered this plea apologizing to the family, and I'd like the Court to take notice of that." (ECF No. 18-2 at 12.) Also at the sentencing hearing, Belk had the opportunity to address the family, stating, "I want to apologize to y'all and may God bless y'all and help y'all through these hard times." (Id. at 12-13.) By entering the plea, Belk avoided a life sentence and accepted a term of thirty years. (ECF No. 18-2 at 13.) Failing to prove either Strickland prong, the court finds that summary judgment should be granted on Ground Four.

### 3.    Ground Five

In his final Ground, Belk contends that the PCR court erred in finding no error in the issue of delayed indictments, and on his right to speedy trial. (Pet., ECF No. 1 at 12.) His final claim is without merit.

Belk's indictment delay issue has been addressed above in Ground Two and need not be revisited. The respondent argues that the speedy trial issue asserted in Ground Five is procedurally barred because Belk did not raise the issue on PCR. (Respt.,'s Mem. Supp. Summ. J., ECF No. 18 at 19-20.) The court agrees. See Humbert v. State, 548 S.E.2d 862, 866 (S.C. 2001) (holding that an issue must be raised to and ruled on by the PCR court to be preserved for appellate review). Moreover, as discussed above in Ground Two, the record supports that Belk's guilty plea was knowing, voluntary, and intelligent, and it is well established that, with a few exceptions not applicable here, where a defendant pleads guilty, he may not later challenge under federal habeas



claims of pre-plea unconstitutionality. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267; United States v. Broce, 488 U.S. 563, 569 (1989) (guilty plea that was "both counseled and voluntary" forecloses collateral attack of judgment of conviction.) Because Belk's guilty plea waives his speedy trial issue, his final claim is barred and the respondent's motion for summary judgment should be granted as to Ground Five.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 17) be granted and Belk's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 19, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).